UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHERROD DARREL PIGEE,

        Petitioner,                                          Civil Action No. 07-CV-15110

v.                                                           HON. BERNARD A. FRIEDMAN

DAN QUIGLEY,

        Respondent.
                       /

## OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS and (2) DENYING CERTIFICATE OF APPEALABILITY

Petitioner Sherrod Darrel Pigee has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner, who is incarcerated at the Baraga Maximum Correctional Facility in Baraga, Michigan, challenges his conviction for conducting a criminal enterprise. For the reasons set forth below, the court shall deny the petition.

**I.**

Petitioner's conviction arises from his involvement in numerous real estate transactions with the intent to defraud. According to the prosecution, petitioner sought out debtors whose properties were in foreclosure and promised to pay their outstanding mortgages in exchange for quit claim deeds to the properties. After petitioner obtained the quit claim deeds, he offered the properties to new buyers on a land contract without having paid off the mortgage. Ultimately, the property would proceed to foreclosure. The original debtor was left with the unresolved debt and the subsequent land-contract buyer lost the property and the money paid to petitioner on the land contract.

Petitioner pled no contest in Genesee County Circuit Court to conducting a criminal

enterprise pursuant to a plea agreement. He was charged with two counts of racketeering, one in 67th District Court, the other in 68th District Court. The plea agreement provided that, in return for petitioner's no contest plea to the count brought in 67th District Court, the count brought in 68th District Court would be dismissed. There would also be a deferred sentencing period. If petitioner complied with all of the terms and conditions during the deferred sentencing period, including paying restitution to the victims, the State agreed to recommend no prison time. At the time the plea was entered, the State estimated the amount of restitution would be approximately $300,000 to $400,000.          In July 2005 the prosecutor received permission from the Genesee County Circuit Court to file *lis pendens* on any property in which petitioner and/or his associates had an interest. *See* Order Allowing People to File Lis Pendens on Property of Sherrod Pigee and Associates, *People v. Pigee*, No. 05-015946 (Genesee County Circuit Court July 25, 2005). Sixteen notices of *lis pendens* were filed with the Genesee County Register of Deeds on August 5, 2005. Named as defendants in the notices of *lis pendens* were, among others, petitioner's wife and young sons.

Prior to sentencing, petitioner filed a motion to withdraw his plea. On the date set for sentencing, petitioner withdrew that motion. Because petitioner failed to pay the required restitution, the prosecutor recommended a prison sentence. On October 20, 2005, petitioner was sentenced to six to 20 years' imprisonment.

Petitioner then filed a motion to withdraw his plea on the grounds that the trial court failed to comply with MCR 6.302(B)-(E) in accepting the no contest plea. The trial court denied the motion on December 19, 2005.

In April 2006 petitioner filed another motion to withdraw his plea on the grounds that

the trial court failed to comply with MCR 6.302(C)(3) in accepting his guilty plea because the court failed to explain to petitioner that the court is not bound to follow the sentence recommendation and that, if the court chooses not to follow the recommendation, the petitioner would be permitted to withdraw his plea.

Petitioner filed an application for leave to appeal in the Michigan Court of Appeals raising 14 claims for relief. That application was dismissed "for failure to pursue the case in conformity with the rules." *People v. Pigee*, No. 267694 (Mich. Ct. App. Apr. 27, 2006).

Petitioner then filed another application for leave to appeal in the Michigan Court of Appeals, raising the following claims:

I.  M.C.R. 6.302(a) requires the court to make all those explanations to defendant required by M.C.R. 6.302(c)(3) regarding plea withdrawal, before accepting defendant's *nolo contendre* plea; *i.e.* the court must do so at the time of the plea hearing. Failure by the court to make all those explanations to defendant required by M.C.R. 6.302(c)(3) at the time of the plea hearing is an error in the plea proceeding that would entitle the defendant to have the plea set aside pursuant to M.C.R. 6.310(c).

II. M.C.R. 6.302(a) requires the court to ask the prosecutor and the defendant's lawyer pursuant to M.C.R. 6.302(e), whether either is aware of any promises, threats or inducements other than those already disclosed on the record, before accepting defendant's *nolo contendre* plea; *i.e.* the court must have done so at the time of the plea hearing. Failure by the court to ask those things required by M.C.R. 6.302(e) of both the prosecutor and the defendant's lawyer at the time of the plea hearing is an error in the plea proceeding that would entitle the defendant to have the plea set aside pursuant to M.C.R. 6.302(c).

III. The response of both the prosecutor and defense counsel saying to the court that the court has complied with M.C.R. 6.302, when in fact the court did not make the mandatory explanations regarding plea withdrawal required by M.C.R. 6.302(c)(3) nor make the mandatory inquiry of respective counsel regarding undisclosed promises, threats or inducements required by M.C.R. 6.302 (e) before accepting the nolo contendre plea as required by M.C.R. 6.302(a), did not obviate the need for the court to have made the mandatory explanations regarding plea withdrawal and mandatory inquiry regarding undisclosed promises threats or inducements to defendant at the time of the plea hearing.

IV. There cannot be an informed, voluntary plea if during the *nolo contendre* colloquy the trial court disregards the mandatory inquiry of both the prosecutor and defense counsel whether either is aware of any other promises, threats, or inducements other than those already disclosed on the record, as required by M.C.R. 6.302(e).

V. The assistant prosecutor's *ultra vires*, illegal literal naming of defendant's uncharged, unindicted wife, friend, and twin 5-year old sons as criminal defendants in this felony racketeering prosecution in 16 libelous *lis pendens* published in the county land records for all the world to see; and 2) the illegal 10- day jailing of defendant while the presiding judge was away for the July 4th holiday; and 3) the publication of the unlawful notice of intent to forfeit the 40-year home of defendant's father, and publication of the unlawful notice of intent to forfeit the 14-year home of the godmother of defendant's twin 5-year old sons, and otherwise naming defendant's wife, twin 5-year old sons, and friends and others therein, published by the assistant prosecutor in the county land records for all the world to see; all of which the prosecution did during the 6 months between plea and sentencing are *ultra vires* and illegal acts that comprise objective evidence of an expressed hostility or threat suggesting that defendant is being deliberately penalized for exercise of his procedural, statutory, and constitutional rights, such as his successful motion to expunge the unlawful notice of intent to forfeit unlawfully naming his family and friends; his successful challenge of the illegal 10-day jailing while the presiding judge was away for the July 4th holiday, in violation of M.C.R. 3.606(a); defendant's exercise of his statutory right pursuant to M.C.L. 780.767(4) to challenge the largest restitution claim as being a fraud on the court barred by judicial estoppel; and defendant's repeated requests for immediate return of his computer ordered by the court at the time of his plea, only to be returned by the prosecution 3-1/2 months later, broken and damaged in violation of M.C.L. 780.655(2) after the prosecution first had to be admonished by the court; all for which the entire prosecution should be dismissed with prejudice as a violation of due process of law shown by all the foregoing objective evidence of actual prosecutorial vindictiveness.

VI. The assistant prosecutor's publication of the unlawful notice of intent to forfeit the 40-year home of defendant's 76-year old father, along with the 14-year home of the godmother of the defendant's five-year old sons is a breach of the plea agreement for which defendant is entitled to specific enforcement for no prison sentence. The assistant prosecutor's libelous literal naming of defendant's uncharged, unindicted wife, friend, and twin five-year old sons as criminal defendants in this felony racketeering prosecution in the case caption of the 16 *lis pendens* recorded in the Genesee County land records for all the world to see is a breach of the plea agreement for which defendant is entitled to specific performance for no prison sentence.

VII. The order of criminal forfeiture prohibiting defendant from ever buying or selling real property ad infinitum is an unreasonable condition of judgment pursuant to

4

>       M.C.L. 750.159j (4) (b) and is essentially an excessive fine in violation of article 1, sec. 16 of the Michigan Constitution and the 8th Amendment of the U.S. Constitution.
>
> VIII. The prosecutor is barred from having prosecuted defendant for racketeering for failure to first notify the state attorney general before conducting its racketeering investigation of defendant as required by the mandatory provision of M.C.R. 750.159x.

The Michigan Court of Appeals denied leave to appeal for lack of merit in the grounds presented. *See People v. Pigee*, No. 270511 (Mich. Ct. App. July 27, 2006).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims that he raised in the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal. *See People v. Pigee*, No. 132128 (Mich. Jan. 31, 2007).

Petitioner then filed the pending petition for a writ of habeas corpus, raising the following claims for relief:

> I. Because M.C.R. 6.302(c)(a) essentially codifies the holdings in *Boykin* and *Brady*, requiring an equally voluntary and knowing plea and an affirmative record thereof, M.C.R. 6.302(a) requires the court to make all those explanations to petitioner required by M.C.R. 6.302(c)(3) regarding conditions of plea withdrawal, before accepting petitioner's *nolo contendre* plea; *i.e.* the court must do so at the time of the plea hearing. Therefore, the trial court's failure to fulfill the plea rule's mandatory provision M.C.R. 6.302(c)(3), requiring explanation of the conditions on which a plea may be withdrawn, and the Michigan Supreme Court's refusal to reverse, results in a decision contrary to, or involved an unreasonable application of, clearly established federal law determined by the Supreme Court of the United States.
>
> II. M.C.R. 6.302(a) and M.C.R. 6.302(e) require the court to ask the prosecutor and the defendant's lawyer, whether either are aware of any promises, threats or inducements other than those already disclosed on the record, before accepting defendant's *nolo contendre* plea; *i.e.* the court must do so at the time of the plea hearing. Failure by the court to ask those things of both the prosecutor and the defendant's lawyer at the time of the plea deprived the petitioner of an equally voluntary and knowing plea and requisite affirmative record thereof required by *Boykin* and *Brady* and M.C.R. 6.302(e).
>
> III. Petitioner's Michigan Supreme Court argument III is similar to arguments I and II

of this petition.  Petitioner adopts arguments I and II for argument III as well.

IV. Petitioner's Michigan Supreme Court argument IV is similar to argument I of this petition.  Petitioner adopts argument I for argument IV as well.

V. The assistant prosecutor's *ultra vires*, illegal literal calling petitioner's uncharged, unindicted wife, friend, and twin 5-year old sons as criminal defendants in 16 *lis pendens* in this felony racketeering prosecution recorded in the county land records; and 2) the illegal 11-day jailing of petitioner while the presiding judge was away for the July 4th holiday; and 3) the recording of the unlawful notice of intent to forfeit the 40-year home of petitioner's father, and publication of the unlawful notice of intent to forfeit the 14-year home of the godmother of petitioner's twin 5-year old sons, and otherwise naming petitioner's wife, twin 5-year old sons, and friends and others therein, recorded by the assistant prosecutor in the county land records; all of which the prosecution did after taking defendant's plea, during the 6 months between plea and sentencing, are misconduct and mischief that comprise objective evidence of an expressed hostility or threat suggesting that petitioner is being deliberately penalized for exercise of his procedural, statutory, and constitutional rights, such as his successful motion to expunge the unlawful notice of intent to forfeit unlawfully naming his family and friends; his successful challenge of the illegal 11-day jailing while the presiding judge was away for the July 4th holiday, in violation of M.C.R. 3.606(a); petitioner's exercise of his statutory right pursuant to M.C.L. 780.767 (4) to challenge the largest restitution claim as being a fraud on the court barred by judicial estoppel; and petitioner's repeated requests for immediate return of his computer ordered by the court at the time of his plea, only to be returned by the prosecution 3-1/2 months later, broken and damaged in violation of M.C.L. 780.655 (2) after the prosecution first had to be admonished with contempt and jail by the court; all for which the entire prosecution should be dismissed with prejudice as a violation of due process of law shown by all the foregoing objective evidence of actual prosecutorial vindictiveness; and as a violation of petitioner's personal liberty right of intimate association with his family protected by the 5th and 14th amendment.

VI. The assistant prosecutor's publication of the unlawful notice of intent to forfeit the 40-year home of petitioner's 76-year old father, along with the 14-year home of the godmother of petitioner's five-year old sons is a breach of the plea agreement for which petitioner is entitled to specific enforcement for recommendation of no prison sentence.  The assistant prosecutor's literal naming of petitioner's uncharged, unindicted wife, friend, and twin five-year old sons as criminal defendants in this felony racketeering prosecution in the case caption of the 16 *lis pendens* recorded in the Genesee County land records is a breach of the plea agreement for which petitioner is entitled to specific performance for no prison sentence.

VII. The order of criminal forfeiture prohibiting petitioner from ever owning, buying or

selling real property ad infinitum is an excessive fine or penalty in violation of the 8th Amendment of the U.S. Constitution.

## II. Legal Standards

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

Additionally, this court must presume the correctness of state court factual determinations. *See* 28 U.S.C. § 2254(e)(1).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application occurs" when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 410-11.

## III.

**A.**

Respondent argues that petitioner's habeas claims are unexhausted because he failed to raise them as constitutional issues in his applications for leave to appeal to the Michigan appellate courts.

A prisoner challenging his confinement by way of a habeas corpus petition must exhaust his state court remedies prior to seeking federal habeas corpus relief by fairly presenting the substance of each federal constitutional claim in state court. *See* 28 U.S.C. § 2254(b); *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998). "Fair presentation requires that the state courts be given the opportunity to see both the factual and legal basis for each claim." *Wagner v. Smith*, __ F.3d __, 2009 WL 3029654, at *2 (6th Cir. Sept. 24, 2009). To properly exhaust, a petitioner must present the issue to both the state court of appeals and the state supreme court. *See id.* The petitioner bears the burden of showing that state court remedies have been exhausted. *See Caver v. Straub*, 349 F.3d 340, 345 (6th Cir. 2003).

> The Sixth Circuit has stated:
>
> A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented: "(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law." *McMeans*, 228 F.3d at 681 (citing *Franklin v. Rose*, 811 F.2d 322, 326 (6th Cir.1987)).

*Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003).

In his state court briefs, petitioner cited provisions of the United States Constitution, relied on federal and state cases employing federal constitutional analysis, and alleged facts, such

8

as those surrounding his claim that his plea was involuntary and unknowing, that are well within the mainstream of constitutional law. The court concludes that petitioner fairly presented the federal nature of his claims.

**B.**

In his first, second, and fifth claims for habeas corpus relief, petitioner argues that his no contest plea was unknowing and involuntary. Petitioner claims that the trial court's failure to comply with MCR 6.302(A), 6.302(C)(3) and 6.302(E) when accepting the plea rendered his plea involuntary and unknowing. In addition, petitioner argues that the naming of his wife and sons as defendants in the *lis pendens* filed in circuit court rendered his plea involuntary.

The Supreme Court has held that, to be valid, a guilty plea must be voluntarily and intelligently made. *See Brady v. United States*, 397 U.S. 742, 748-49 (1970). The plea must be made "with sufficient awareness of the relevant circumstances and likely consequences." *Id.* at 748. A guilty plea must be accompanied by "an affirmative showing that it was intelligent and voluntary." *Boykin v. Alabama*, 395 U.S. 238, 242 (1969). "Such a showing is generally made by the government's production of a transcript of state court proceedings to establish that the plea was made voluntarily." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004). The voluntariness of a plea "can be determined only by considering all of the relevant circumstances surrounding it." *Brady*, 397 U.S. at 749. A "plea of guilty entered by one fully aware of the direct consequences" of the plea is voluntary in a constitutional sense, and the mere fact that the defendant "did not correctly assess every relevant factor entering into his decision" does not mean that the decision was not intelligent. *Id.* at 755, 757. A guilty plea may be involuntary where it is induced by threats, misrepresentation, or promises "that are by their nature improper." *Mabry v. Johnson*, 467 U.S. 504, 509 (1984). The

plea must represent "a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970).

Petitioner argues first that his no contest plea was involuntary because the trial court failed to fulfill the requirements of MCR 6.302(C)(3) when accepting his plea. Michigan Court Rule 6.302(C)(3) states that the trial court must advise the defendant that:

> The court is not bound to follow the sentence disposition or recommendation agreed to by the prosecutor, and that if the court chooses not to follow it, the defendant will be allowed to withdraw from the plea agreement.

The plea hearing transcript shows that the trial judge did not advise petitioner in accordance with MCR 6.320(C)(3). However, petitioner cites no authority establishing that such advice is required under the federal constitution. The trial court advised petitioner that he was waiving the right to a jury trial, the right to confront his accusers, and the privilege against self-incrimination. The trial court also informed petitioner that, by pleading no contest, he was exposing himself to criminal forfeiture proceedings. After the prosecution failed to recommend a sentence of no prison time, petitioner moved to withdraw his plea. Thus, petitioner clearly understood that he could file such a motion. Therefore, the failure to advise petitioner in accordance with MCR 6.320(C)(3) did not render his plea involuntary.

Next, petitioner argues that the trial court failed to comply with MCR 6.320(A) and 6.320(E), rendering his plea unknowing. Rule 6.302(A) requires that the a trial court may not accept a plea of guilty or no contest unless it is convinced that the plea is understanding, voluntary and accurate. It further requires that, before accepting a plea, the court must carry out subrules (B)-(E). Rule 6.320(E) states, in relevant part:

> On completing the colloquy with the defendant, the court must ask

> the prosecutor and the defendant's lawyer whether either is aware of any promises, threats, or inducements other than those already disclosed on the record, and whether the court has complied with subrules (B)-(D).

Although the question was asked of petitioner, the trial court did not ask the prosecutor or defense counsel whether they were aware of any promises, threats, or inducements other than those on the record. The trial court did ask the prosecutor and defense counsel whether he had complied with the court rules, both sides indicated that he had. Petitioner argues that if the trial court had complied with MCR 6.320(E), the prosecutor would have had to disclose that she intended to name petitioner's wife and young sons as defendants in the case caption of *lis pendens* filed in the Genesee County Land Records. Petitioner argues that if he had been so advised, he would not have pled guilty. The court rejects this argument. First, petitioner has failed to cite any authority showing that the requirement established in MCR 6.320(E) are required by the Constitution. Second, petitioner has failed to show that his plea was rendered unknowing by the subsequent actions of the prosecutor. A promise to take or to refrain from initiating any actions bearing upon petitioner's ownership interest in various properties was not part of the plea agreement. Petitioner stated that he was aware of no promises beyond those stated on the record. Thus, he clearly was not entering his plea based upon any understanding that the prosecutor would refrain from taking such actions.

Finally, petitioner argues that the naming of his wife and two young sons as defendants in the notices of *lis pendens* rendered his plea involuntary because it violated their Fifth and Fourteenth Amendment due process rights and, consequently, also violated hi Fifth and Fourteenth Amendment personal liberty right of intimate association with his family. As this claim involves events which occurred after petitioner entered his plea, they could not have induced him to plead guilty. In addition, there is no evidence that any promises were made to petitioner

11

regarding forfeiture proceedings. Therefore, the court finds that the notices of *lis pendens* did not render petitioner's plea involuntary or unknowing.

## C.

Petitioner next argues that the prosecutor's actions related to the notice of *lis pendens* were motivated by prosecutorial vindictiveness. In addition, he argues that the following are further evidence of prosecutorial vindictiveness: jailing of petitioner over the Fourth of July holiday weekend, recording of an unlawful notice of intent to forfeit the home of petitioner's father, and the publication of an unlawful notice of intent to forfeit the home of the godmother of petitioner's children.

"To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort." *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978). To show vindictive prosecution there must be "(1) exercise of a protected right; (2) a prosecutorial stake in the exercise of that right; (3) unreasonableness of the prosecutor's conduct; (4) the intent to punish the defendant for exercise of the protected right." *United States v. Suarez*, 263 F.3d 468, 479 (6th Cir.2001).

> The Sixth Circuit has stated:
>
> There are two approaches to showing prosecutorial vindictiveness: a defendant can show (1) "actual vindictiveness," by producing "objective evidence that a prosecutor acted in order to punish the defendant for standing on his legal rights," or (2) "a realistic likelihood of vindictiveness," by utilizing the framework outlined above (focusing on the prosecutor's "stake" in deterring the exercise of a protected right and the unreasonableness of his actions). *Bragan v. Poindexter*, 249 F.3d 476, 481-82 (6th Cir.2001).

*United States v. Dupree*, 323 F.3d 480, 489 (6th Cir. 2003).

In the present case, petitioner has not shown that any of the prosecutor's actions were

12

the result of vindictiveness. Petitioner attaches to his petition transcripts of a deposition of the prosecutor taken in connection with a complaint filed by an associate of petitioner alleging that her rights were violated when she was named as a defendant in the notice of *lis pendens* and a Notice of Interest filed with the Genesee County Register of Deeds. *See Sanders v. Hanson*, No. 2:05-CV-72760 (E.D.Mich.). The deposition transcript supports a finding that the prosecutor's actions were reasonable attempts to seek restitution for the victims of petitioner's criminal actions and to alert individuals to potential encumbrances on these properties. Petitioner presents no persuasive evidence to support a finding that the prosecutor's actions were intended to punish him for the exercise of a protected right. Accordingly, habeas relief is denied on this claim.

### D.

Petitioner next argues that the prosecutor violated the plea agreement in the following ways: by filing a notice of intent to forfeit the homes of petitioner's father and the godmother of petitioner's sons, by naming as defendants in the *lis pendens* filed in the Genesee County Land Records petitioner's wife, friend, and two sons, and by failing to recommend that petitioner not serve any prison time.

Where a plea "rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262 (1971). "[W]hen the prosecution breaches its promise with respect to an executed plea agreement, the defendant pleads guilty on a false premise, and hence his conviction cannot stand." *Mabry,* 467 U.S. at 509.

> "[p]lea agreements are contractual in nature. In interpreting and enforcing them, we are to use traditional principles of contract law." *United States v. Robison*, 924 F.2d 612, 613 (6th Cir.1991). One fundamental principle of contract interpretation is that "primary

13

> importance should be placed upon the words of the contract. Unless expressed in some way in the writing, the actual intent of the parties is ineffective, except when it can be made the basis for reformation of the writing." 11 Williston on Contracts § 31:4 (4th ed. 2000). Consistent with the principle articulated by Williston, this court has held that the state will be held to the literal terms of the plea agreement. *United States v. Mandell*, 905 F.2d 970, 973 (6th Cir.1990) (citing *United States v. Kamer*, 781 F.2d 1380, 1387 (9th Cir.1986)).

*Smith v. Stegall,* 385 F.3d 993, 999 (6th Cir. 2004).

Petitioner fails to demonstrate that the prosecutor breached the plea agreement. During the plea colloquy, petitioner was informed that the agreed-upon sentencing recommendation was dependent upon petitioner paying restitution before the date set for delayed sentencing. Petitioner was also aware at the time of the plea that the parties had not yet agreed upon the precise amounts of restitution. Because petitioner did not pay the restitution as required by the plea agreement, the prosecutor did not breach the plea agreement in declining to recommend no prison time. In addition, petitioner fails to show that the forfeiture proceedings themselves breached the plea agreement. Petitioner was made aware of forfeiture proceedings during the plea hearing, and the prosecutor did not promise to suspend those proceedings. Additionally, during the plea hearing petitioner did not express any concerns that he would be unable to pay restitution in light of the forfeiture proceedings. Therefore, petitioner fails to demonstrate that the prosecutor breached the plea agreement.

### E.

Finally, petitioner argues that the order of criminal forfeiture limiting petitioner's ability to own, buy, and sell real property violates the Eight Amendment's prohibition against excessive fines.

Mich. Comp. Laws § 750.159(j) provides that the court shall order a person who violates Mich. Comp. Laws § 750.159(i) to criminally forfeit to the state any real, personal, or intangible property in which he or she has an interest and that was used in the course of the illegal conduct. The statute further provides that the court may

> [i]mpose reasonable restrictions on the future activities or investment of the convicted person, including prohibiting the convicted person from engaging in the same type of endeavor as the enterprise engaged in.

Mich. Comp. Laws § 750.159(j)(4)(b).

Pursuant to this subsection, the Genesee County Circuit Court issued an order of criminal forfeiture stating, *inter alia*, that petitioner "be restricted from owning, buying or selling ANY real estate, except for the home in which defendant has proven to reside . . ." *See* Order of Criminal Forfeiture dated October 28, 2005, No. 05-015946. Petitioner argues that the limitation on his future actions violates the Excessive Fines Clause of the Eight Amendment.

The Eighth Amendment to the Constitution of the United States provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." The Excessive Fines Clause "limits the government's power to extract payments, whether in cash or in kind, as punishment for some offense." *United States v. Bajakajian*, 524 U.S. 321, 328 (1998). Only gross disproportionality will raise an Eighth Amendment excessive fines concern. *See id.* at 334-35.

In this case, the court finds that eliminating petitioner's ability to engage in the practice which formed the basis for his substantial illegal activity is not grossly disproportionate to the gravity of his offense. While the limitation imposed by the sentencing court is severe, so is the nature of petitioner's offense. Therefore, the court finds no Eighth Amendment violation.

**IV.**

A district court may decide whether to issue a certificate of appealability ("COA") at the time the court rules on a petition for a writ of habeas corpus or it may wait until a notice of appeal is filed to make such a determination. *See Castro v. United States,* 310 F.3d 900, 903 (6th Cir. 2002). In deciding to deny the habeas petition, the court has carefully reviewed the case record and the relevant law, and concludes that it is presently best able to decide whether to issue a COA. *See id.* at 901-02.

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (internal quotation omitted). In this case, the court concludes that reasonable jurists would not debate the court's conclusion that the petition does not present any claims upon which habeas relief may be granted. Therefore, the court will deny a certificate of appealability.

**V.**

For the reasons stated above,

IT IS ORDERED that the petition in this matter for a writ of habeas corpus is denied.

IT IS FURTHER ORDERED that a certificate of appealability is denied.

                    S/Bernard A. Friedman
                    Bernard A. Friedman
                    United States District Judge

Dated:  October 23, 2009

I hereby certify that a copy of the foregoing document was served upon Sherrod Pigee and counsel of record on October 23, 2009, by electronic and/or ordinary mail.

                    S/Carol Mullins
                    Case Manager